RECTOR v. McCARTHY.

Opinion delivered January 4, 1896.

PROMISSORY NOTE—GUARANTY OF INTEREST.—One who guaranties
payment of the interest on a note becomes liable for interest
only until the maturity of the note.

Appeal from Crittenden Circuit Court in Chancery.

JAMES E. RIDDICK, Judge.

*Messrs. Rose, Hemingway & Rose*, for appellant.

The guaranty in this case was a continuing one,
running until the notes were paid. The contract was
that the appellees should pay the interest on the notes,

which by terms was interest from date until paid. 31 Ark. 626 ; 40 *id.* 120 ; 32 *id.* 572 ; *Ib.* 616 ; *Id.* 165 ; 36 *id.* 480 ; 49 *id.* 427 ; 51 *id.* 204. The court below misconceived the effect of 43 N. Y. 194 and 44 *id.* 677. In those cases there was no contract to pay interest after maturity. Guarantors are liable for the interest on notes the same as the makers. Perley on Interest, 15 ; 2 Col. 596 ; 1 Brandt, Suretyship & Guaranty, secs. 157, 158, 159, 160.

*Messrs. S. R. Cockrill* and *Ashley Cockrill,* for appellees.

A guaranty is construed strictly in favor of the guarantor, and must be construed so as to give effect to the intention of the parties as gathered from the surrounding circumstances. 48 Ark. 442 ; Brandt, Suretyship & Guaranty, sec. 93 ; 42 U. S. 169, 11 L. ed. 89 ; 35 U. S. 493, 9 L. ed. 507 ; 41 U. S. 528. 10 L. ed. 1056 ; Baylies, Sureties & Guarantors, pp. 6, 124 ; 73 N. Y. 335. If the guaranty extends beyond the date of the maturity of the notes, it extends forever. The guarantors would not have even the poor privilege of discharging their obligation by the payment of the principal, for they are not parties to the note, and a creditor is not bound to accept his debt from a stranger to the contract. Can it be possible that the parties contemplated that interest should thus run on forever? 54 Ark. 229 ; 1 Brandt, Suretyship & Guaranty, secs. 167–179. The legal presumption was that the maker would discharge the notes when they became due. The guarantors contracted with reference to that fact. 43 N. Y. 244 ; 1 Brandt, Suretyship & Guaranty, secs. 166-175; 12 Mich. 297. Every person is supposed to have some regard for his own interest ; and it is not reasonable to presume that any man of ordinary prudence would become surety for another,

without limitation as to time or amount, unless he has done so in express terms or by clear implication. 24 Wend. 82; 2 Watts & S. 237; 13 Barb. 158; 76 Me. 345; 32 S. C. 354; 32 Ohio St. 324; 30. Am. Rep. 572; 39 Ohio St. 324; 48 Am. Rep. 454; 107 N. Y. 565.

BUNN, C. J. Sam J. Churchill executed to appellant his two promissory notes, in the following form: "[$1083.33]—Little Rock, Ark., Jan. 1, 1890. On or before the 1st day of January, 1892, for value received, I promise to pay H. M. Rector one thousand and eighty-three dollars and thirty-three cents, with interest at the rate of ten per cent. per annum from date until paid; interest payable annually. As witness my hand, the date above written. Sam J. Churchill." Upon this note the appellees made the following guaranty: "We guaranty the payment of the interest on the above note. [Signed] McCarthy & Joyce."

"It is agreed that the two notes were given by Sam J. Churchill for a lot of stock and farming implements on what was known as the plaintiff's farm, in Pulaski county, Arkansas, which he had leased from the plaintiff for three years from date of notes, and that the said Sam J. Churchill also executed a mortgage on said stock and property to secure the said notes; that the said Sam J. Churchill abandoned the Rector farm, which he had leased, and failed to pay the first note due for said stock, and thereupon the plaintiff, H. M. Rector, through the trustee in the deed of trust securing said notes, took possession of the said stock and farm property, and sold it, and appropriated the proceeds in part payment of the mortgage debt. This sale was had in February, 1891, and by said sale $173.78 was paid on the note in suit first maturing, such payment being credited as of February 17, 1891.

"It is further agreed that the guaranty of interest, as written upon said notes, was written by the defend-

ants in due course of their business as merchants, and
for the purpose of enabling Sam J. Churchill to obtain
the stock and farm implements for the purpose of farm-
ing, in order that he might have an opportunity thereby
to pay certain prior indebtedness which he owed the
guarantors.

"It is further agreed that no action has been taken
by the plaintiff, H. M. Rector, to enforce the collection
by law of the said notes against Sam J. Churchill since
their maturity, and that the said Churchill has been
entirely insolvent, and without visible property, since the
maturity of said notes and since said mortgage sale."

Appellant sued the appellees for installments of
interest accruing before and after the maturity of the
notes, and on the trial before the court, sitting as a
jury, asked the following declarations of law: "The
guaranty in suit is a continuing guaranty, and running
until the notes are paid." The court refused this, and
declared that the guaranty ran only until the maturity
of the notes, and gave judgment only for the interest
accruing before maturity. The plaintiff saved proper
exceptions to the ruling, filed a motion for a new trial,
saving all points, and, this being overruled, excepted,
filed his bill of exceptions, and appealed.

Thus it will appear that the only controversy in
this case is, whether or not one who guaranties the
payment of the interest on a promissory note is bound
for the payment of the interest that may accrue after
the maturity of the note. There are few cases in the
books that bear directly upon this point, although there
is no want of authorities that indirectly influence the
discussion of it. And from these we gather that the
courts have adopted certain rules by which the con-
tracts of sureties and guarantors are to be construed;
and some of these rules briefly stated are: that a surety
or guarantor is, first of all, a favored suitor; that the

obligation of his contract will not be extended beyond its plain and obvious meaning; and when there is a doubt and uncertainty as to the meaning, growing out of an ambiguity of language that makes construction necessary, the doubt will be resolved in favor of the surety or guarantor, for the reason that he is not, and can never be, the full recipient of the consideration which has accrued or may accrue to the principal debtor, and, further, because his situation is comparatively a dependent one, since he does not enjoy the opportunity of protecting himself that belongs to the other parties to the contract.

We take it, therefore, that courts are to construe the contracts of these favored suitors, not exactly by the same rule as they would construe the contracts of the principal parties to the contracts. Thus while, as between these principals, the contract is to be construed so as to express the meaning and intention of both parties to it, in the case of the surety or guarantor that construction is to be given to his contract which will cause it to express *his* meaning and intention, and this intention to be such as the guarantied party should have reasonably attributed to the guarantor in making the contract, judging from the circumstance surrounding and the object to be attained. 1 Brandt, Suretyship & Guaranty, sec. 122, 123, 156.

The principle announced is more readily understood by illustration than by mere general definition of the obligation. It would lengthen out this opinion too much, of course, to pursue the argument by that method. Cases wherein the contracts were held to be continuing are cited and commented upon in Brandt, Suretyship & Guaranty, from section 157 to 161, inclusive; and, when not continuing, from section 161 to 165. In section 166 of the same book, this general principle is announced: "When the words of the con-

dition of a bond are general and indefinite as to the time
during which the surety shall remain liable, if there is
a recital in the bond, specifying the time during which
the prescribed duty is to be performed by the principal,
the general words will be limited by the recital, and the
surety will only be liable for the time therein specified."
Thus it is said when an officer lawfully holds beyond
the term for which he was elected or appointed, the
surety on his official bond will not be bound for his acts
or defaults after the expiration of the term for which
he was elected or appointed. Of course the recitals of
the bond itself might be made to cover the additional
time.

In *Hamilton* v. *Van Rensselaer*, 43 N. Y. 244, where,
Waddington and two others being indebted to the plain-
tiff's assignor in the sum of $10,000, it was agreed, in
July, 1854, that he would be released from this joint
obligation upon executing and delivering his bond for
one-third of said amount, payable in January, 1861, with
semi-annual interest, and defendant's guaranty of pay-
ment of the interest, which was done. The guaranty
by defendant was as follows, endorsed on the bond
given : "For value received, I guaranty the punctual
payment of the interest on demand in default of its pay-
ment by Mr. Waddington."

The question was whether defendant was bound for
the interest beyond the date of the maturity of the bond.
*Held*, that he was not. After adverting to the strict
legal doctrine that it is only interest accruing before
maturity of the obligation that is denominated *interest*
in the true sense, and that that which accrues after-
wards is, strictly speaking, damages for breach of the
contract of payment, and also to the contention of
plaintiff "that in construing the contract it is not to be
supposed that the parties had knowledge of or reference
to these legal distinctions when the contract was made,

and that business men regard the sum recoverable after
the principal is due, in their dealings with each other,
as interest in the ordinary sense of the term, and not
as compensation by way of damages," Chief Justice
Church, in delivering the opinion of the court said:
"Conceding the soundness of this position (of plaintiff's
counsel) these recognized distinctions may be resorted to
by the defendant to prevent a technical or arbitrary
construction against him. The true rule of construc-
tion undoubtedly is that the intent of the parties, to be
gathered from the language and surrounding circum-
stances, is to prevail. The intent of the defendant,
ascertained by legal rules, was to agree to pay the
interest expressly provided for in the bond only; but
when the plaintiff urges that the defendant has em-
ployed general words guarantying the payment of in-
terest upon the bond without limitation, and that these
words include interest after as well as before default,
and claims to enforce the rigid rule of liability therefor,
it is pertinent to answer that, by strict legal rules,
interest, as such, cannot be recovered after default in
the payment of the principal, and that such interest is
not, therefore, within the language of the contract."
The learned judge continues: "We do not place the
decision upon this narrow ground, but prefer to rest it
upon the position that, by the plain and ordinary mean-
ing of language used in the contract, when applied to
the facts existing at the time it was made, the interest
recoverable after the principal became due, whether it
is regarded as interest upon a continuing contract or as
damages for its *non-performance*, was not in the con-
templation of the parties at the time, and was not inter-
est specified and provided for in defendant's contract.
The construction contended for by plaintiff might ren-
der the contract as burdensome as if it had been a
guaranty of the payment of the principal itself. The

defendant might never be able to discharge the obligation, except by the payment of the principal, and in that case the result would be to compel him substantially to perform a contract which, it is conceded, he never entered into." The same argument, we think, is applicable to the case now under consideration. We cannot conceive the idea that, if, at the time of making the guaranty, the appellee had even had an intimation that his obligation would be sought to be extended in the end, he would ever have entered into it. It follows, therefore, that, if bound at all, it is not because he so intended when he entered into the contract, but because of a contingency which some technical rule required him to anticipate and provide against.

It seems to us that a guarantor of the payment of interest only,—a mere incident of the debt,—as in this case, is entitled to even greater consideration at the hands of the creditor than one who has guarantied the whole debt; and the reason is not far to seek. Such a guarantor cannot (if the theory of plaintiff be correct) protect himself by the usual statutory provisions, and is at the mercy of both creditor and debtor—wholly subjected to the consequences of the neglect of the one, and the failure of the other.

The principle announced in the case of *Hamilton* v. *Van Rensselaer*, *supra*, was re-asserted in *Melick* v. *Knox*, 44 N. Y. 676, except that in the latter case the theory that interest accruing after maturity is not in fact interest, but damages, which seems to have been in effect discarded as a vital principle in *Hamilton* v. *Van Rensselaer*, is maintained. If that theory be true, of course it is an additional ground for the affirmance of the judgment in the case now under consideration. However, as we understand it, to break the force of this theory, appellant's counsel call our attention to the fact that, as a settlement of a controversy once pending

here, this court has in several cases declared it settled law with us that, where the conventional rate of interest merely is stipulated, and no words employed to indicate the co-existence of the rate of interest with the debt, the conventional rate ceases at the maturity of the debt, and the legal rate then begins; but that, on the contrary, when words are employed indicating the intention of the parties to have been that the conventional should be the rate until the debt should be paid, the interest accruing after maturity is in fact interest, and not damages, because it is so declared by express contract. There is force in this argument, but we are inclined, after all, to the opinion, in view of the peculiar language of our constitution, and the object sought to be attained in the cases referred to, that the decisions of this court therein were intended to extend no further than to determine what should be the percentage before and after maturity in any given case; and that the court in none of these cases had in contemplation the distinction between the name and meaning of this percentage before and the same after maturity of the debt; and consequently, the theory existing before the decisions as to this distinction remains the same with us, whatever that may have been. But this is only one of the grounds suggested by the courts as a basis for the rule contended for by appellee.

The case is not altogether free from doubt, but, from all the authorities directly in point we are able to present on the subject, and from reason equally as cogent for the position of the court below, if not more so, than for the opposite one, we are of opinion that there is no error in the judgment of the court below, and the same is therefore affirmed.