POWELL v. FOWLER.

Opinion delivered March 2, 1908.

1. PRINCIPAL AND SURETY—DISCHARGE BY ALTERATION.—A surety can not set up as a discharge from liability an alteration of the contract which was known and consented to by him when he executed the contract. (Page 456.)

2. SAME—IMMATERIAL ALTERATION.—Where a surety upon the bond of an insurance agent expressly consented to any change in the con-

tract which 'did not materially vary the agreement, the surety was not discharged by a subsequent agreement between the agent and his employer postponing the time of payment of such agent's salary. (Page 457.)

3. INSTRUCTION—WHEN REFUSAL TO GIVE HARMLESS.—The refusal of the court to give an instruction applicable to a certain issue was not prejudicial if by their verdict the jury found a state of facts which would have rendered such instruction immaterial. (Page 458.)

4. PRINCIPAL AND SURETY—EFFECT OF IMPOSING NEW DUTIES ON PRINCIPAL.—A surety for the performance of the duties of an agent is not discharged by the subsequent imposition of new duties on the agent if such new duties do not materially affect the performance of his original duties nor increase the risks of the surety. (Page 458.)

5. SAME—INSTRUCTION.—Where the court, in a suit upon an agent's bond, was requested to instruct the jury that if the obligee's negligence, laches or non-performance of his part of the contract, or his interference with the work of the agent, *contributed to prevent the agent from carrying out his part of the contract*, he cannot recover from surety, it was not error to substitute the phrase "caused the agent to fail to carry out the contract" for the words italicised. (Page 459.)

Appeal from Pulaski Circuit Court; *Edward W. Winfield*, Judge; affirmed.

STATEMENT BY THE COURT.

Plaintiff, A. S. Fowler, entered into a written contract with R. P. Powell, one of the defendants, whereby he employed the latter to act as his agent in soliciting and procuring applications for life insurance in the Massachusetts Mutual Life Insurance Company, of which plaintiff was general agent in Arkansas. By this contract, Powell was, in common with other agents, authorized to solicit insurance in any part of Arkansas where the insurance company permitted policies to be issued. He bound himself to act exclusively for Fowler, and to devote his entire time to the exclusion of any other avocation, and was to receive as compensation certain scheduled commissions upon the first premiums on policies issued by the company upon applications secured by him. The following clauses of said contract are pertinent to the issues involved in this case:

"Sec. 11. If the party of the second part writes applications upon which policies are issued, delivered and paid for to the amount of five hundred thousand dollars on or before the

first day of July, 1906, in said company, and for the party of the first part, the party of the first part will pay to the party of the second part two thousand dollars in addition to the commission mentioned herein, and $4 per thousand for each one thousand dollars written, issued, delivered and paid for, in excess of the $500,000 above mentioned. Should the party of the second part fail to write the $500,000 as specified above, the party of the first part will pay only the commissions mentioned herein, and no more. The party of the first part will pay as an advance to the party of the second part one hundred and sixty-six dollars and sixty-six cents ($166 2-3) per month in advance; the party of the first part to hold back ten per cent. of said commissions mentioned herein that may be due the party of the second part to reimburse the party of the first part for any advance the party of the first part may have paid the party of the second part on the above proposition.

"Sec. 14. If the party of the second part exceed five hundred thousand dollars, issued and paid for within one year from the date of this contract, the party of the first part will pay to the party of the second part $4 per thousand for each one thousand dollars in excess of the five hundred thousand dollars, in addition to the commissions mentioned herein.

"Sec. 15. If the party of the second part fails to write the five hundred thousand dollars as above mentioned, then the party of the second part will not be entitled to any compensation except the commissions mentioned herein; and in the event the commissions held back do not pay the party of the first part in full for all advances at the expiration of the contract above mentioned, the party of the second part will, on demand, pay to the party of the first part the full amount that the party of the first part may have advanced to the party of the second part, and receive only the commissions mentioned herein, and no more."

The contract bears date as of June 27, 1905, and by its terms ran for one year from July 1, 1905. Powell executed and delivered to Fowler his bond, dated July 1, 1905, with S. M. Powell as surety, conditioned that he would discharge his duties as soliciting and collecting agent in accordance with the rules and regulations of the said insurance company and pay over all

moneys collected and received by him, as well as all money which he then owed or might thereafter owe to the plaintiff Fowler, either on account of advances to him or otherwise. The bond concludes as follows: "It being understood and agreed that this obligation shall not be annulled or revoked without the consent of the above named A. S. Fowler, but shall be and remain in force so long as said R. P. Powell shall continue to be the agent of said A. S. Fowler, whether under his existing appointment or any future one, and until all transactions under such agency shall have been finally adjusted and settled in accordance with the terms of the agreement made between the said A. S. Fowler and the said R. P. Powell, agent; it being understood and agreed that this bond shall similarly apply to any subsequent agreement between said parties, the terms of which do not materially vary from such agreement and all liabilities of said R. P. Powell by reason thereof shall have been discharged."

Powell failed to secure applications upon which policies were issued to the amount of $500,000, and Fowler instituted this action against him and his surety S. M. Powell to recover the sum of $1168.42, on account of money advanced under the contract, after giving credit for the amount repaid out of his commissions.

Defendant R. P. Powell filed his separate answer and counterclaim, alleging that the plaintiff failed to perform his part of the contract, in that he failed to make the advances agreed upon, and performance of his contract, by having him to do work not in the contract; that plaintiff also interfered with him in the contract by refusing to permit him to work and causing him to abandon his work for a long space of time. By way of counterclaim, he pleaded that, by reason of plaintiff's nonperformance of his part of the conrtact, he was damaged in the sum of $2,500 for commissions which he could have earned had he been permitted to do so by the plaintiff.

S. M. Powell answered separately, alleging that plaintiff failed to carry out his part of the contract with R. P. Powell, in that he refused to make the advances of salary agreed upon, and in not permitting the said R. P. Powell to work in obtaining insurance applications. He alleged that the plaintiff re-

quired R. P. Powell to do other work than that specified in the contract, thereby preventing him from performing his contract.

On the trial of the case before a jury, a verdict was returned in favor of the plaintiff for the amount sued for against both defendants. Judgment was rendered accordingly, and the defendants appealed.

*J. H. Harrod,* for appellants.

1. The second instruction was erroneous. The contract provided that appellee should make the advance each month. If the contract is changed in any material matter without the surety's consent, he is discharged. 65 Ark. 550; 73 Ark. 473; 71 Ark. 199.

2. It was error to instruct the jury that appellant was not entitled to recover on his counterclaim.

3. If appellee failed to perform his part of the contract, or so interfered with the work of R. P. Powell as to prevent him from performing his work, he is not entitled to recover against either defendant, and the court ought so to have instructed the jury. 65 Ark. 320.

4. It was error to refuse appellant's second instruction and to give it as modified. S. M. Powell was a surety, and was released if appellee caused R. P. Powell to devote his time to other work.

5. The court's modification of the third instruction requested by appellant was erroneous. "One of the parties to a contract can not complain of a failure to perform on the part of the other if his own laches or refusal to perform has contributed to defeat the object of the contract." 43 Ia. 239; 79 Ill. 181; 73 N. C. 283; 63 N. Y. 365.

*Ashley Cockrill* and *Roscoe R. Lynn,* for appellee.

1. The agreement to hold back the September advancement had been made prior to the time the surety signed the bond, and he knew it when he signed. He can not complain. 27 Am. & Eng. Enc. of L. (2 Ed.) 528, *et seq.* But, at any rate, the instruction was more favorable to appellant than he was entitled to. 69 Ark. 126; 23 How. 165; 23 N. E. 1095; Brandt on Suretyship, § 432; *Id.* § 341; 19 U. P. Can. (Q. B.) 73; 56 Fed. 281; 110 Mass. 163; 47 Ia. 357; 47 Neb. 673; 50 Ia. 549.

2.  The court's instruction as to the counterclaim was correct.  9 Am. & Eng. Enc. of L. 608, *et seq.;* 57 Ark. 203; 54 Ark. 216.

3.  The first instruction requested by appellant was properly refused.  Even if it was a correct statement of the law, it is fully covered by other instructions given at appellant's request.  Moreover, the promise to make advancements was clearly an independent promise on appellee's part, which could have been eliminated without materially affecting the contract. But if it was conditional or dependent, and even if it was a condition precedent, it was waived by R. P. Powell in the course of performance of the contract.  Clark on Contracts, 466.

4.  Appellant's claim that if the nonperformance of a contract *contributes* to prevent the other party from carrying it out he is released from liability for failure to perform his part of the contract is not well taken.  27 Ark. 65; 38 Ark. 178; 2 Parsons on Contracts, 523; Clark on Contracts, 468; 110 U. S. 344.

5.  There was no error in modifying appellant's second request for instruction. As asked it was misleading, and even as given it was wrong, and more favorable to appellant that he was entitled to.  27 Am. & Eng. Enc. of L. 498.

McCULLOCH, J., (after stating the facts.)  It is conceded that the evidence was sufficient to sustain the verdict, and that no errors were committed in the admission of evidence.  The only errors assigned are in the giving and refusing of instructions to the jury.

It is unnecessary to set out the instructions given and refused, as they can be intelligently discussed without doing so. There was evidence introduced to the effect that the advance due to be made on September 1, 1905, was not made by appellee Fowler at that time, but that by agreement between him and R. P. Powell the time for that payment was postponed for an indefinite length of time.

The court, over the objection of the defendants, gave the following instruction: "2.  You are instructed that an agreement merely to hold back the payment of the September advance until the end of the contractual year is not sufficient to discharge the surety *in toto*, but that said surety will be dis-

charged only to the extent that he is injured by reason of the withholding of said advance."

Appellants, in support of their objection to that instruction, invoke the well-established doctrine that any agreement changing the time of the contract between the principals without the consent of the surety operates as a discharge *in toto* of the latter. It is sufficient to say that the doctrine contended for has no application to the facts of this case, because the undisputed evidence shows that, notwithstanding the contract of the surety bore date as of July 1, 1905, it was not signed by him and delivered to appellee until November 1, 1905, which was after the alleged part payment of the September advance, and that he (the surety) knew of this when he signed and delivered the contract of suretyship. He can not therefore set up as a discharge from liability that which was known and consented to by him when he executed the contract. 27 Am. & Eng. Enc. of Law, p. 528-9, and authorities cited.

The instruction was therefore more favorable to appellants than the law justifies. Of course, if appellee, as testified to by R. P. Powell, refused to advance the payments due in September, and thereby prevented or interfered with him in the performance of his contract, he and his surety would both be discharged from liability to the extent of the damage incurred by reason of withholding such advance, but to no further extent. But the surety could not repudiate his contract and claim release from all liability on account of the withholding of the payment, of which he was advised, and to which he tacitly consented by signing and delivering the bond.

We think, too, that the agreement to postpone the payment of the September advance was not such a material change in the contract as would operate as a discharge of the surety. The surety by the terms of his bond expressly consented to any change in the contract which did not materially vary the agreement. He agreed that his bond of suretyship should apply to any further agreement not materially different in terms. The alleged agreement to postpone the September payment was in effect the making of a new agreement to that extent; and, as it did not materially vary the terms of the agreement, it was authorized by the terms of the bond. Unlike the agreement for

extension of the time of payment of a debt for which a surety is bound, the postponement of the payment of the September advance did not affect the rights of the surety, for it did not increase or extend his liability or materially change the contract which he obligated himself to perform for his principal by refunding all moneys due to appellee Fowler.

Appellants complain of the refusal of the court to submit to the jury the question of damages alleged to have been sustained in the loss of the additional commissions of $4 per thousand in excess of $500,000 of insurance to be written during the year. The court refused to submit this question as an element of recoverable damages, on the ground that it was too remote and speculative. No prejudice resulted from the refusal to submit this question, as the jury, in finding in favor of appellee for the amount of money advanced, necessarily found that appellee did not prevent or interfere with Powell in complying with his agreement to secure applications for as much as $500,000 of insurance on which the company would be willing to issue policies. As Powell did not procure $500,000 in accepted applications, and the jury found that Fowler did not by his conduct prevent him from procuring that much insurance, it necessarily follows that he could not have earned the additional premiums on applications in excess of $500,000.

Appellants requested the court to give an instruction to the effect that if Fowler "caused R. P. Powell to devote a material part of his time to other work," that would release the surety. The court refused to give the instruction in the form asked, but modified it so as to tell the jury that "if Fowler and R. P. Powell made material changes in the agreement by which Powell was to devote any material part of his time to other work," that would release the surety. The modification was correct. If Fowler imposed additional duties upon Powell without altering the original contract, and which did not interfere with the performance of the contract, that would not operate as a release of the surety; but if the principal changed the contract materially so as to make it a new contract, the performance of which the surety did not guaranty, then he would not be liable for the failure to perform it. It is argued by counsel for appellant that the instruction, even as modified,

was too favorable, because, it is said, in a contract for performance of personal services, unlike a building contract, the agreement for additional services does not affect the liability of the surety unless the additional duties interfere with the performance of the original contract. Whether this is correct we need not decide. The following is stated to be the law on that subject on good authority: "The general principle controlling in such cases is that the surety for the performance of the original duties is not discharged unless the new duties materially affect the performance of the old, or affect the obligation of the principal in respect to the old, thus increasing the risks of the surety." 27 Am. & Eng. Enc. of Law, p. 499, and cases cited.

The court was asked to instruct the jury that "if the plaintiff's negligence, or laches, or nonperformance of his part of the contract, or his interference with the work of R. P. Powell, *contributed* to prevent R. P. Powell from carrying out his part of the contract, he cannot recover against either of the defendants"; but the court modified the instruction so as to say that if such conduct on the part of the plaintiff *caused* Powell to fail to carry out the contract, he could not recover. The modification amounted only to a change in phraseology, and was immaterial. If Fowler's alleged misconduct contributed to prevent Powell from carrying out his contract, then it caused him to fail to carry out the contract; but, notwithstanding such misconduct on the part of Fowler, if Powell could have performed the contract and did not, then neither he nor the surety was released.

Error of the court is also assigned in the refusal to give the first instruction asked by appellants; but, as the substance of this instruction was fully covered in another given at their request, no prejudice resulted.

No error is found in the proceedings, and the judgment is affirmed.