Allen GREEN *v.* ARKANSAS POWER & LIGHT COMPANY

73-230                                                          505 S.W. 2d 743

Opinion delivered March 4, 1974

*Hale, Hale, Fincher & Hoofman, P.A.,* for appellant.

*House, Holmes & Jewell,* for appellee.

J. FRED JONES, Justice. This is an appeal by Allen Green from a circuit court judgment against him for $3,671.99 in favor of Arkansas Power & Light Company on a bond signed

by Green agreeing to be personally liable for the payment for electric service furnished by the power company to Allen Green and Associates, Inc. at its apartment complex in Little Rock.

On October 16, 1967, Arkansas Power & Light Company entered into a written contract with Allen Green and Associates, an Arkansas corporation, to furnish electric service to the corporation on "open order" (meaning temporary basis) at AP&L's G-1 rate schedule beginning October 16, 1967. The contract was on AP&L's printed form and was designated "Agreement For Temporary Electric Service," the word "temporary" was inserted. Pertinent language in the contract, with the insertions underlined, reads as follows:

"(3) Company shall supply and Customer shall take and/or pay for all electric service required by Customer for the above operation in accordance with Rate Schedule(s) *G-1* and Company's Service Regulations. . . .

(4) No monthly bill (or seasonal bill when applicable) for electric service will be less than *rate schedule minimum* and Customer agrees to pay, as a minimum charge, such monthly (or seasonal) bill until this Agreement is terminated pursuant to the provisions of Paragraph 10.

(6) All bills for electric service hereunder will be rendered monthly, are due upon presentation, and are payable within ten days from the date thereof at any business office of the Company.

(10) The term of this Agreement shall be from *October 16, 1967*, or the date service is first made available hereunder, whichever is earlier, to *Open Order*, and shall be automatically extended for successive periods of one year each until terminated by written notice given by one party to the other nor more than six months nor less than three months prior to the expiration date of the original term or any anniversary thereof.

(12) This constitutes the entire and only agreement between the parties hereto with reference to the subject

matter hereof and supersedes all previous understandings whether written or oral."

In lieu of a cash deposit of $5,000 to insure the prompt payment of bills, Allen Green and Associates, Inc., and Allen Green personally, entered into a bond agreement as follows:

"THAT WE, Allen Green and Associates, Inc. as Principal, and Allen Green as Surety, acknowledge ourselves to be indebted and firmly bound unto the Arkansas Power & Light Company in the sum of Five Thousand and No/100 Dollars ($5,000.00) for the payment whereof we bind ourselves, our heirs, executors, administrators and assigns, jointly and severally by these presents.

WHEREAS, the said Allen Green and Associates, Inc. has entered into a contract with the Arkansas Power & Light Company, to take from it electric service at Chateau DeVille Apartment Complex in the 6200-6300 Blocks on Asher Avenue, Little Rock, Arkansas and to pay promptly therefor the bills presented by said Arkansas Power & Light Company in accordance with the company's rules and regulations and to abide by said rules and regulations in other respects therein set forth.

NOW, THEREFORE, if said Allen Green and Associates, Inc. performs its obligations *in said contract dated October 16, 1967,* and shall pay all bills for such service promptly when due, then this obligation shall be void; otherwise, to remain in full force and effect; provided, that said Arkansas Power & Light Company shall notify said Surety, if, at any time, said bills are unpaid and in arrears for a period of sixty (60) days and thereupon, said Surety, upon giving ten (10) days notice, to quit such service under the terms and securities of this bond, shall be discharged from further liability thereon, and upon the payment by said Principal or Surety of the amount due and owing to said Arkansas Power & Light Company, the obligation of the Surety hereunder shall cease and determine."

(Emphasis added).

All bills were promptly paid under the 1967 contract, and on September 7, 1970, AP&L and the Allen Green Corporation entered into another written agreement for permanent service on an identical printed form as the first agreement with the pertinent provisions and changes appearing as follows:

"(3) Company shall supply and Customer shall take and/or pay for all electric service required by Customer for the above operation in accordance with Rate Schedule(s) *G5* and Company's Service Regulations. . . .

(4) No monthly bill for electric service will be based on less than *$210.00* and Customer agrees to pay, as a minimum charge, such monthly bill until this Agreement is terminated pursuant to the provisions of Paragraph 10.

(10) The term of this Agreement shall be from *Sept. 18, 1970,* or the date service is first made available hereunder, whichever is earlier, to *Sept. 18, 1973,* and shall be automatically extended for successive periods of one year each until terminated by written notice given by one party to the other not more than six months nor less than three months prior to the expiration date of the original term or any anniversary thereof." (Emphasis added).

This contract also provided the same provisions in paragraphs 6 and 12 as did the first contract, and this 1970 contract was simply designated "Agreement For Electric Service" without the insertion of the word "temporary." At the top of the 1970 contract is typed in capital letters language as follows:

"SUPERSEDES AGREEMENT FOR TEMPORARY ELECTRIC SERVICE DATED OCTOBER 16, 1967."

The power company furnished electrical service under

the 1970 contract but the Allen Green Corporation failed to pay for the services furnished from November 18, 1970, to February 18, 1971, and the service was discontinued. On July 30, 1971, the power company filed the present suit in circuit court on the 1967 bond, and prayed joint and several judgment against the corporation and Allen Green for the amount of the account, in the amount of $3,671.99.

A jury was waived and the circuit judge, sitting as a jury, found in favor of the power company and rendered judgment against Green for $3,671.99. On appeal to this court Green contends that the trial court's judgment against him is erroneous as a matter of fact and as a matter of law. We agree with the appellant Green that the judgment must be reversed.

The case was submitted to the trial judge in chambers and tried without a court reporter being present. Dale Booth, the manager of AP&L was the only witness who testified and the record of his testimony was prepared and submitted on stipulation under Ark. Stat. Ann. § 27-2127.11 (Repl. 1962).

In AP&L's brief is found a statement as follows:

"When the new agreement was executed in September, 1970, appellee again waived the requirement of a $5,000 cash deposit and *agreed* to rely upon the original personal surety bond of the appellant. Appellant understood this and *agreed* to this procedure without the necessity of executing a new surety bond. It was just that simple." (Our emphasis).

The appellee then argues equitable principles that should be considered in this matter, but this is a law case and must be considered as such on this appeal. In *St. L., S. W. Ry. Co.* v. *Cook-Bahlau Co.*, 187 Ark. 106, 58 S.W. 2d 428, this court said:

"Courts do not make contracts for the parties, but only construe them. The parties having made this contract in clear and unambiguous language, it is the duty of the court to construe it according to the plain meaning of the language employed, and not to enlarge or extend its terms on any theory. . . ."

See also *Brotherhood Ry. Tr.* v. *Deaton*, 175 Ark. 733, 1 S.W. 2d 51.

It is true, according to Mr. Booth's testimony, that when the new agreement between the two corporate entities was executed in September, 1970, the power company again waived the requirement of a $5,000 cash deposit and relied upon the original personal liability bond signed by the appellant Green. But we find no evidence in the record that Green agreed to such reliance or to such procedure.

Mr. Booth testified that when the 1967 agreement was entered into, the termination date was left open because it was a temporary contract only. He said the apartment complex was still under construction and at Mr. Green's request he executed a surety bond in lieu of a cash deposit in the amount of the bond. He said that at Mr. Green's request, and after receiving assurances from him that the facilities would not have to be moved for permanent service, the facilities were changed over on a permanent basis and a new contract was entered into. He said that under the termporary contract, a G-1 rate, was charged and that under the second contract a G-5 rate was charged. He said the G-5 rate was much cheaper than the G-1 rate and said: "We explained the difference between the G-1 rate and the G-5 rate and encouraged Mr. Green to change over to G-5 at such time as he knew the facilities would be permanent and not apt to be moved." He then testified as follows:

"Of course, the change in permanent service was to the benefit of Allen Green and Associates, Inc., because it would be paying a much lower rate for electricity. We did not have Mr. Green execute a new surety bond in 1970 because we relied upon the 1967 surety bond he had already executed. We considered the 1967 surety bond to still be in effect. Arkansas Power & Light Company would not have given Mr. Green a new contract in 1970 without relying upon a surety bond in the amount of the Plaintiff's Exhibit 1, or a cash deposit in lieu thereof in that same amount."

As we interpret this testimony, when Mr. Booth used the pronoun "we," it is clear he was referring to the power company

personnel or officers and not to the officers and Mr. Green.

Appellant Green relies on the case of *Rector* v. *McCarthy*, 61 Ark. 420, 33 S.W. 633. The appellee power company argues that *Rector* v. *McCarthy* is distinguishable from the case at bar and relies on our decision in *Powell* v. *Fowler*, 85 Ark. 451, 108 S.W. 827. We find both of these cases distinguishable on their facts and neither of them controlling in the case at bar. We think the rule recited in *St. L., S. W. Ry. Co.* v. *Cook-Bahlau Co.*, *supra*, is more applicable to the case at bar than are the rules by which contracts of sureties and guarantors have been construed as set out in *Rector* v. *McCarthy*, *supra*.

In *Powell* v. *Fowler*, *supra*, the surety was for the payment of commission on the sale of insurance and the additional or new agreement was to suspend or hold back advances on commissions until the end of the contractual year. The trial court gave an instruction to the jury to the effect that such agreement was not sufficient to discharge the surety *in toto*, but that said surety would be discharged only to the extent that he is injured by the withholding of such advances. This court in affirming the trial court on appeal distinguished that case from the one at bar in language as follows:

> "[T]he agreement to postpone the payment of the September advance was not such a material change in the contract as would operate as a discharge of the surety. The surety by the terms of his bond expressly consented to any change in the contract which did not materially vary the agreement. He agreed that his bond of suretyship should apply to any further agreement not materially different in terms. The alleged agreement to postpone the September payment was in effect the making of a new agreement to that extent; and, as it did not materially vary the terms of the agreement, it was authorized by the terms of the bond."

No such agreement by Green is evident in the record before us in the case at bar. It is true that in the case at bar Green was the president and perhaps the principal stock owner in Allen Green and Associates, Inc., but nevertheless

Allen Green and Associates, Inc. was an Arkansas corporation as clearly recognized and set out in parentheses in both the contract of October, 1967, and that of September, 1970. He signed both contracts as Allen Green and Associates, Inc. by Allen Green. He also signed the bond for the principal as Allen Green and Associates, Inc. by Allen Green, Pres., and also signed the bond as an individual surety, Allen F. Green.

As we view the record before us, there were three separate and unambiguous contracts involved in this case. There is no question that under the first contract Arkansas Power & Light Company, a corporation, was dealing with Allen Green and Associates, Inc., another corporation, for the furnishing of electrical energy and service to the latter corporation on a temporary basis under a higher rate schedule and for an indefinite period of time while its apartment buildings were under construction. There is no question that under the second contract, the Allen Green Corporation and Allen Green personally agreed to promptly pay all bills presented by the Arkansas Power & Light Company accruing under the first contract dated October 16, 1967. There is no question that the bond signed by Allen Green provided that if the Allen Green Corporation performed its obligations under the contract for service dated October 16, 1967, and should pay all bills for such service promptly when due, then the obligation of Allen Green would be void. It is clear from the evidence that the bills presented under this first contract were paid. There is no question that the third contract entered into on September 18, 1970, by the two corporations, clearly provided that it superseded the previous agreement dated October 16, 1967, and it is also clear that it contained the following provision: "This constitutes the entire and only agreement between the parties hereto with reference to the subject matter hereof and supersedes all previous understandings whether written or oral."

We conclude, therefore, that under the unambiguous language of the three contracts, including the bond signed by Allen Green, that the judgment of the trial court must be reversed and the cause as to Allen Green be dismissed.

Judgment is reversed.