## MORGAN v. DAVIS, BANK COMMISSIONER.

### Opinion delivered May 21, 1917.

BANKS AND BANKING—INSOLVENCY—BOND EXACTED OF OFFICERS—LIABILITY THEREON.—The State Bank Commissioner, upon discovering that the capital of a certain bank had become impaired, required the officers of the bank to execute a bond, conditioned that all just debts and liabilities of the bank should be paid within twelve months, the bank being then permitted to operate. *Held*, the bond was such as the Commissioner had the right to exact under the statute, and that the parties executing the bond were primarily liable thereon, in an action at law. (Acts 1913, Act No. 113, p. 462.)

Appeal from Union Circuit Court; *Charles W. Smith*, Judge; affirmed.

*Neill C. Marsh*, for appellant.

1. It was error to refuse to transfer this cause to chancery. Act March 3, 1913.

2. The court erred in sustaining the demurrer to the amended and substituted answer. The amended answer stated no defense. The bank was not insolvent and appellants are not liable on the bond. There was no consideration for the guaranty—a mere naked promise to pay is not sufficient. 12 R. C. L. 1076-7, par. 28; 24 Ark. 511; 111 Ark. 224-6; 20 Cyc. 1413, 1417. A mere forbearance to sue is not sufficient. 93 Fed. 171. The ·bank was not insolvent and no demand is alleged by Union County or the American Bank & Trust Company. There is no liability by guarantors unless there is a substantive liability of the principal debtor.

3. Equity had jurisdiction. 9 Ark. 501-4. The guarantors were entitled to have the assets of the principal debtor exhausted. 60 Ark. 531; 6 Ark. 317; Kirby's Digest, § 7921. Until this was done there was no liability. The cause should have been transferred to equity. The liability of appellants was not primary.

*Mahony & Mahony* and *W. E. Patterson,* for appellee.

1. The answer states no defense, and the cause should not have been transferred to equity. The action is based on a statutory bond. Act No. 113, Acts 1913, p. 490. The bond was authorized by law; no other consideration was necessary. But the bond recites the consideration. A slight variation from the terms of the statute does not invalidate. 5 Cyc. 747. See also 97 Ark. 553; 76 *Id.* 415; 10 *Id.* 89; 40 *Id.* 433.

2. The court properly refused to transfer to equity. No equitable defense was shown. The remedy at law was adequate. 97 Ark. 384; 22 *Id.* 198.

3. The appellants were bound absolutely and unconditionally after six months to pay. Kirby's Digest, §§ 1990, 4420, 6010, etc.

SMITH, J.   John M. Davis, as Bank Commissioner, filed this suit against appellants, and, for cause of action, alleged that the American Bank & Trust Company is an insolvent banking and trust company doing a banking business under the laws of this State in the city of El Dorado.   That on March 29, 1915, the capital of the bank had become greatly impaired, and plaintiff, as Bank Commissioner, demanded of S. R. Morgan, then the president, and of the other officers and directors thereof, that they pay a sufficient sum of money to restore the capital of said bank; but said officers were at the time unable to make said payment, but, in lieu thereof, executed their bond in the sum of $30,000 to the plaintiff, as Bank Commissioner, for the use and benefit of the creditors of the bank, the condition of said bond being that, if the said defendants should, within six months from the date thereof, pay all just debts and liabilities of the said bank in full, the bond was to be null and void, otherwise to remain in full force.   That since the 18th day of July, 1915, the said bank has been indebted to Union County, and to Finn Craig, as the treasurer thereof, in the sum of $5,874.69, and that since the expiration of the said period of six months from the date of said bond numerous demands for the payment of said funds have been made, but payment thereof has been refused.   There was a prayer for the amount of said deposit.

The answer admitted that the capital of the bank was impaired on March 29, 1915, but denied that the bank was then insolvent.   It was alleged that the bond was without consideration, and that it was not such a bond as was authorized by law, and there was a denial of the authority of the commissioner to maintain this suit thereon.   They alleged the fact to be that the sum sued for was a deposit made in said bank as the depositary of the public funds of Union County, to secure which the county had exacted, and received, a bond, made to the State of Arkansas, for the use and benefit of Union County, in the sum of $110,000, conditioned that

said deposit should be paid to the county on demand. It was also alleged that, in addition to this bond executed by the bank as the county depositary, the stockholders of said bank, who were named, were primarily liable for said money upon the failure of the bank to pay the same. The answer further alleged that, on March 29, 1915, while the affairs of the bank were being liquidated, the Bank Commissioner required of defendants the bond sued on, which was executed by them under the belief that the affairs of the bank could be so settled that all depositors and creditors could be paid out of the assets of the bank, but that the assets of the said bank had been taken out of the hands of the liquidating agent of the bank and placed in the hands of a receiver by the chancery court of Union County, and were later turned over by the said court and the receiver thereof to the State Bank Commissioner, and that the said commissioner now has in his hands assets of a sufficient value to pay off the liability sued on. And it was alleged that the liability of defendants was secondary. There was a prayer that the commissioner be required to first liquidate the assets of the bank and apply the proceeds thereof to the payment of said indebtedness, and that he be then required to file suit, for any balance, on the bond of the bank as depositary, and against the stockholders to enforce their liability as such, and that plaintiffs be subrogated to the rights of Union County against those primarily liable if they are required to pay any sum under the bond sued on. And there was a prayer that the cause be transferred to the chancery court where the rights alleged to exist could be enforced.

The court overruled the motion to transfer, and sustained a demurrer to the answer, and, upon the defendants, refusing to plead further, rendered judgment for the amount sued for, and this appeal has been prosecuted to reverse that judgment.

Appellants present an argument in support of the allegations of their answer the essence of which is that

there is no primary liability on their part, and that judgment should not have been rendered against them until those primarily liable had been sued. But we think appellants have made the fundamental mistake of assuming that their liability is not a primary one, for such it is.

Upon discovering the condition of the bank, the commissioner had the right and was under the duty of requiring the proprietors, stockholders, or officers, to pay a sum of money sufficient to restore the bank's solvency, or to execute a bond to the commissioner for the use of the creditors for such sum as the commissioner may require, conditioned that all just debts and liabilities will be paid in full within twelve months. Upon failure to do one or the other of these things, it became the duty of the Bank Commissioner to take over the assets of the bank and liquidate them. Act 113, Acts 1913, page 462. By executing this bond the sureties thereon were granted the right to continue in business, and this compliance with the statute furnished the consideration for the bond and made the undertaking an original one, upon which the parties thereto became primarily liable upon a breach of its conditions without reference to the liability of others for the same indebtedness upon other grounds.

It is true the answer denied insolvency, although it admitted that the bank's assets had become impaired. But section 52 of this act of 1913 vests in the commissioner the duty of determining when a restoration of its capital, or a bond in lieu thereof, shall be made, and the bond in question was executed pursuant to this determination by the commissioner. It is true the bond recites that the capital of the bank had become "impaired," rather than that the bank had become insolvent; but it also recited that the commissioner had demanded of the officers and directors of the bank that they pay a sufficient sum of money to restore the capital of said bank, and there was also a recital in the bond of the inability of said officers and directors to make such payment and

that the bond was made in lieu of the cash payment. The authority to require the bond arose upon the finding by the commissioner that the bank was insolvent within the meaning of insolvency defined in section 51 of the Banking Act. The bond does not undertake to define what was meant by the impairment of the assets of the bank; but, within this section 51, a sufficient impairment of its assets would mean insolvency, and we must presume the word was employed in that sense.

It is also true that the bond was conditioned upon the payment of the debts and liabilities within six months, instead of twelve months as stated in the statute. But we think this departure from the time named in the statute does not affect the character of the bond as a statutory one. The recitals of the bond manifest a purpose to execute a bond pursuant to the statute and for the purpose of obtaining the benefit flowing from its execution. No purpose is manifested in the execution of the bond except to comply with the statute. It accomplishes no purpose other than that authorized by the statute, and varies from the statute only in the matter of time. It includes the obligations imposed by the act except in respect to time, and does not undertake to exclude any defenses which would have existed had the bond been executed in exact compliance with the statute.

In the case of *Crawford* v. *Ozark Ins. Co.*, 97 Ark. 549, it was said that, where a bond was executed pursuant to the requirements of a statute, the presumption would be indulged that it was the intention of the bondsmen to execute the bond in compliance with the requirements of the statute, unless it would do violence to the language of the bond itself to so hold, and that such bonds would be construed as if the statute were written in them as respects the rights and liabilities of principal and surety.

We think the variation indicated is not sufficient to destroy the validity of the bond as a statutory one. *Nunn* v. *Goodlett*, 10 Ark. 89; *State* v. *Smith*, 40 Ark. 431.

And if we are correct in so holding, it must necessarily follow that no error was committed in refusing to transfer the case to the chancery court, for each of the signers thereof is liable thereon without reference to the liability of any other person; nor is this liability dependent upon any equity which may exist among the sureties themselves. Sections 4420 and 6010, Kirby's Digest; *Warren* v. *Nix*, 97 Ark. 374; *Reiff* v. *Redfield School Board,* 126 Ark. 474, 191 S. W. 16.

The judgment of the court below is, therefore, affirmed.