## MALONE v. WADE.

### Opinion delivered May 16, 1921.

1. TENANCY IN COMMON—TENURE.—Tenants in common hold by several and distinct titles, but by unity of possession.

2. TENANCY IN COMMON—LANDLORD'S LIEN.—Where two tenants in common leased land to defendant, and one of the cotenants advanced supplies to the lessee to make the crop, he will be entitled to a landlord's lien therefor, under Crawford & Moses' Dig., § 6890.

3. PAYMENT—LANDLORD'S LIEN—APPLICATION OF PROCEEDS OF CROP.—Where a landlord has a lien not only for rent but also for advances of supplies for the crop of his tenant, he may apply the proceeds of such crop first to the account for supplies.

4. LANDLORD AND TENANT—BREACH OF LEASE.—Where a tenant does not pay the rent when due and makes no effort thereafter to pay it on notice that the lessors did not intend to wait on him longer, this constituted a breach of the lease and warranted eviction.

5. LANDLORD AND TENANT—DAMAGES FOR UNLAWFUL EVICTION.—A tenant unlawfully evicted by the landlord may recover the loss directly and naturally resulting therefrom, including the excess of the rental value over the agreed price and the expense of removal to another place.

Appeal from Lonoke Circuit Court; *George W. Clark,* Judge; reversed.

### STATEMENT OF FACTS.

A. D. Malone and J. N. Harris brought a suit of unlawful detainer against W. T. Wade to recover possession of a tract of land which the plaintiffs had leased to the defendant.

The defendant denied that the plaintiffs were entitled to the possession of the premises and filed a cross-complaint in which he seeks to recover damages on account of being evicted from the land in question. The material facts are as follows:

On the 9th of October, 1918, A. D. Malone and J. N. Harris leased to W. T. Wade and J. M. Bradford for a period of five years, beginning January 1, 1919, a tract of land in Lonoke County, Arkansas, comprising 546 acres. The contract provided that the lessors should retain a lien on all crops on the place until the rents were fully paid each year, and that the rents should be paid as the cotton was gathered and to be finally paid by November 1 of each year. The lessees agreed to pay $15 per acre each year, or eighty pounds of lint cotton of middling grade, or better. The contract further provided that the lessees should deaden a certain amount of green timber during the summer of 1919, and clear certain lands before the close of the year 1921. It was further provided that the lessees should keep open all the ditches on the place and keep clean all the turn rows.

The lessees were unable to procure any one to furnish them supplies to make the crop for the year 1919, and reported that fact to the lessors. A. D. Malone agreed to, and did, furnish them with supplies to make the crop for the year 1919. In the late summer, or early fall, of 1919, the lessees admitted that they were not able to run so large a place, and it was agreed that the lease contract should be canceled except that each party should retain 160 acres and execute a new lease contract for that amount identical in terms with the original contract.

Malone furnished Wade with merchandise and supplies to the extent of about $7,000 with which to make a crop during the year 1919. Wade failed to pay his rent and supply account, and on the 5th day of February, 1920, A. D. Malone brought suit against him in the chancery court to foreclose his lien for rent and supplies. J. N. Harris was appointed receiver to take charge of the crop

and acted in that capacity without pay. On March 11, 1920, there was a decree by default in favor of Malone against Wade in the sum of $3,460, less the proceeds of the crop in the sum of $2,619.12, leaving a balance due Malone by Wade of $840.88.

According to the testimony of Malone, Wade failed to comply with the contract by cleaning the turn rows and keeping the ditches open. The lessors caused notice to be served on Wade in the manner provided by the statute on the 6th day of February, 1920, to vacate the premises. Wade refused to vacate and was evicted in the manner provided by statute. Malone and Harris denied that they, or either of them, promised to furnish Wade for the year 1920, and stated that they told him he must pay his rent and supply account or get off the place. They waited for him to do so until the 6th day of February, 1920, and, finding that he had made no effort to pay his rent and account for supplies for the year 1919, or to supply himself for the year 1920, they caused notice to be served on him to vacate the premises as above stated.

W. T. Wade was a witness for himself. According to his testimony, Malone first left the impression on him that he was going to take his "stuff," and he thought that, if he did not do something, Malone would "clean him up." Wade then went to see J. J. Scroggin and told him about his condition. He made arrangements with Mr. Scroggin to pay Malone for him. He did not pay Malone because Scroggin went to Florida without letting him have the money." When Wade first told Malone and Harris that Scroggin would "fix him up," Malone left the impression on Wade that he would carry over his account, until after Mr. Scroggin had gone away. Wade testified that he would have worked the land in 1920, if he had not been put off. Other evidence was adduced by him tending to show the damages suffered by him on account of being evicted from the land.

Other facts will be stated or referred to in the opinion.

The jury returned a verdict for defendant, and from the judgment rendered the plaintiffs have appealed.

*Morris, Morris & Williams,* for appellants.

The verdict is not only without evidence to sustain it, but is directly against the clear and conclusive evidence in regard to which there was no conflict. 24 Ark. 227; 15 *Id.* 109; 8 *Id.* 155; 7 *Id.* 435. See, also, 10 Ark. 309; 7 *Id.* 462; 5 *Id.* 640. Failure to pay rent and to quit possession after demand in action of unlawful detainer are good grounds of action, independent of their being made grounds of forfeiture in the contract of lease. 57 Ark. 301; C. & M. Digest, §§ 4838, 4842.

The complaint complied with these sections, and the verdict is contrary to the law and the evidence, and a new trial should be granted.

*Williams & Holloway,* for appellee.

There is substantial evidence to support the verdict, and the damages are not unreasonable or shocking to any court. The great preponderance of the evidence sustains the verdict.

HART, J. (after stating the facts). It is earnestly insisted by counsel for the plaintiffs that the evidence is not legally sufficient to support the verdict, and in this contention we think counsel are correct. Under the terms of the lease contract, the rent was to be finally paid on the first of November of each year. This provision was for the benefit of the lessors and might be waived by them. According to the testimony of the defendant, they waited on him until some time after the first of the year to pay the rent and supply account. Wade had been unable to supply himself, and, some time after the execution of the lease contract, he made an agreement with A. D. Malone to furnish him with merchandise and supplies with which to make a crop in 1919. Malone waited for Wade to pay him his account for supplies and the amount due as rent until the 5th day of February, 1920. Malone and Harris owned the land as tenants in common.

Tenants in common hold by several and distinct titles, but by unity of possession. The reason is, that none knoweth his own severalty, and therefore they all occupy promiscuously. *Firemen's Insurance Co.* v. *Larey,* 125 Ark. 93.

Therefore, under section 6890 of Crawford & Moses' Digest, Malone would be the landlord of Wade, and as such landlord would have a lien upon the crop raised upon the demised premises for the value of advances made by him to Wade to make a crop during the year 1919. Malone brought suit in the chancery court to foreclose his lien for the amount of his supply account and the rent due. A decree was rendered in his favor against Wade for the balance due of $840.88. Wade made no defense to the foreclosure suit and made no effort to finish paying his supply account or the balance of the rent due for the year 1919. Having a lien for the rent and supplies, Malone had a right to apply the proceeds first to the payment of the supply account, and this left a balance of over $800 on the rent. These facts are established by the undisputed evidence and constituted a breach of the lease contract which warranted the lessors in evicting the lessee from the premises.

It is true Wade testified that Malone led him to believe that he would carry him over, and that Scroggin had promised to pay off his indebtedness to the plaintiffs. Wade knew, however, when notice to quit was served on him on the 6th day of February, 1920, that his lessors did not intend to wait on him any longer, and it devolved on him to make arrangements to pay his rent, or to forfeit his right to longer occupy the premises. Yet, after this time, he made no effort to get into communication with Scroggin, or to carry out his contract with the plaintiffs. He did not even make any defense to the foreclosure suit. Therefore, the undisputed facts, as disclosed by the record, warranted the plaintiffs in evicting him from the premises.

Complaint is also made by the plaintiffs as to the instruction given by the court on the measure of dam-

ages. We do not deem it necessary to set out this instruction. Suffice it to say that the instruction complained of follows the rule laid down in *McElvaney* v. *Smith*, 76 Ark. 468. In that case the court said:

"When a landlord unlawfully evicts a tenant from the premises, the tenant is entitled to recover as damages whatever loss results to him as a direct and natural consequence of the wrongful act of the landlord. If the rental value of the place from which he is evicted is greater than the price he agreed to pay, he may recover this excess and, in addition thereto, any other loss directly caused by the eviction, such as the expense of removal to another place."

For the error in not directing a verdict for the plaintiffs, the judgment will be reversed and the cause remanded for a new trial.