CONSOLIDATED INDEMNITY AND INSURANCE COMPANY *v.* STATE USE CRAIGHEAD COUNTY.

Opinion delivered November 2, 1931.

582

*Baker & Gautney,* for appellant.

*Chas. D. Frierson, Jr.,* and *Chas. D. Frierson,* for appellee.

McHANEY, J. Prior to February 21, 1930, the American Trust Company of Jonesboro, hereinafter called the bank, was designated by proper orders of the county court a depository of the public funds of Craighead County, conditioned upon its giving bond. On said date the bank as principal and appellant as surety, executed a bond to the county treasurer and the State in the sum of $50,000, referred to as the penalty, and conditioned that the bank should, during the term thereof beginning that date and ending December 31, 1930, "promptly pay over on proper legal order such cash and cash items as shall have been actually and regularly deposited with it during the terms of this bond in an account subject to check, together with the balance of cash or cash items to the credit of the obligee at the beginning of said term, as well as the amount of interest which the bank has contracted to pay thereon, then this obligation shall be null and void; otherwise to remain in full force and

effect." On November 1, 1930, the bank became, or was insolvent, and was placed in the hands of the Bank Commissioner for liquidation with George A. Knox, special deputy in charge. On that date the county treasurer had on deposit in the bank subject to check $86,459.70. Thereafter demand was made on appellant to pay the amount of its bond, $50,000, which it declined to do, and this suit followed, making the bank, the Bank Commissioner, the special deputy, Knox, and appellant defendants. Appearance was entered by all defendants except appellant. It thereafter filed a petition and bond for removal of the cause to the Federal District Court for the Eastern District or Arkansas on the ground of diversity of citizenship, it being a foreign corporation. It was alleged in the petition that, as between it and appellees, there was a controversy that could be wholly determined without affecting the interest of its co-defendants; that the bank was insolvent and in the hands of the Bank Commissioner; that the appellees' claim had been filed and allowed, there being no dispute about the amount of it, and that further litigation could not under the law gain for the treasurer any additional right or remedy in the collection thereof; that, on account of the nature of the action involving public funds affecting the interests of taxpayers and public of the county, it could not get justice in the State court, by reason of prejudice and local influence; and that the cause was separable; that the other parties defendant are not necessary parties and were joined for the wrongful purpose of preventing a removal. The court heard and denied the petition to remove on the ground that the requisite diversity of citizenship between the parties did not exist, and that there was no separable controversy between citizens of different States, it being a suit against principal and surety, the former being a citizen of this State and the latter of a different State, and that all defendants were properly joined. Appellant answered under protest, denying its full liability under said bond, and pleaded certain provisions thereof hereafter set out as reducing the

amount of its liability thereunder. The bank, the Bank Commissioner and the special deputy answered admitting liability of the bank, but that such liability must be liquidated under the State banking laws.

The case was submitted to the court sitting as a jury and judgment was rendered against appellant for the full amount of the penalty of its bond, with interest, and against the bank and Bank Commissioner for the full amount of the deposit without execution on the bank, but to be paid in the regular course of liquidation. Appellant only brings the case here for review on appeal.

It is first said the court erred in refusing to remove the cause to the Federal court. No error was committed in this regard as there was no separable controversy, such as entitles appellant to remove. This is a suit against the principal, the bank, and the surety, appellant. The obligation is joint and several. Both the bank and appellant agree in the obligation that they are held and firmly bound to the obligee ''in the full and just sum of fifty thousand and no/100 dollars ($50,000) * * * for the payment of which well and truly to be made, we bind ourselves, our successors and assigns, *jointly and severally,* firmly by these presents.'' So it is denominated in the bond that the obligation is joint and several. As said in 21 R. C. L., § 123, p. 1081: ''As a surety is one who enters into a contract with another as principal, either jointly or jointly and severally, he may in all cases be sued jointly with the principal. But, if the obligation is joint and several, the creditor has the undoubted right to proceed against the surety alone, or, if he chooses, he may sue the principal and at the same time bring an action also against the surety, and prosecute both suits concurrently until he obtains satisfaction from one of them.'' Appellees therefor had the undoubted right to sue both the bank and appellant jointly as has been done in this action, and it can make no difference that the claim has been presented to and allowed by the Bank Commissioner and his liquidation agent, nor that the bank acknowledges the indebtedness and admits the amount

thereof to be justly due. There might be and probably are a number of reasons why appellees desire to secure this judgment against the bank, the principal in the bond. Whatever these reasons may be, and although the bank is admittedly insolvent, appellees had the right to join these parties as defendants at their option under the statutes of Arkansas and the decisions of this court. By § 1099, Crawford & Moses' Digest it is provided: ''Persons severally liable upon the same contract, including * * * sureties on the same or separate instruments, may all, or any of them, * * * be included in the same action at the plaintiff's option,'' and § 1100 provides: ''Where two or more persons are jointly bound by contract, the action thereon may be brought against all or any of them, at the plaintiff's option.'' See also § 1076, Crawford & Moses' Digest. Appellees having the absolute right to join appellant with the other defendants, there is no separable controversy and no right to remove as such. The other allegations of the petition for removal do not amount to a charge of fraudulent joinder. Moreover, it appears that the charge of local prejudice among the taxpayers and because of the subject of litigation being public funds passes out of the case as a jury was waived, and trial was had before the court, against whom no charge of prejudice was made.

Passing now to the arguments made on the merits, appellant concedes that it is liable in some amount, but that the full penalty of the bond should be reduced by reason of three certain terms and conditions of the bond. It is also conceded that the facts are undisputed, which is true. The bond contained the following three express conditions, which are made precedent to the right of recovery:

''(1). If any time during the term of this bond the obligees, to the amount of $25,000, which, to that the moneys deposited with the bank, such security shall not be released without notice to, and the written consent of the surety.

"(2). In case the moneys on deposit with the bank to the credit of the obligee shall, at the time any loss is sustained on this bond, exceed the penalty of the bond, and obligee shall not hold additional security equal to the amount of such excess deposits, the liability of the surety hereon shall be limited to such proportion of the penalty of this bond as the said penalty shall bear to the total sum of money on deposit at the time of the loss.

"(3). The surety shall be liable hereunder only for such proportion of the total loss sustained as the penalty of this bond shall bear to the aggregate amount of all bonds and securities, whether collectible or not, furnished to the obligee and in no event shall the surety be liable hereunder in any sum in excess of the penalty of this bond."

It appears that at the time appellant executed the bond in question, there had been for some time certain United States Government $4\frac{1}{4}$ per cent. bonds and certain improvement district bonds of the par and actual value of $25,000 held in a safety deposit box of the bank under the joint control of the bank and the county treasurer, as collateral security for the county funds, and that a personal bond, called by appellant a "blanket bond", had been executed and delivered by certain persons, officers and directors in the bank, to the county treasurer, guaranteeing the payment by the bank of all the county's funds on demand. This latter bond was executed in April, 1929, and had never been released. The county treasurer was advised by the Attorney General that it was not lawful for collateral to be held in escrow to secure public funds, but that a surety company bond was required. Whether this advice was correct or not, the collateral held under joint control was taken down when appellant executed this and two other like bonds—one to the collector for $50,000, later reduced by agreement to $5,000, and the liability thereon of about $800 paid, and one to Drainage District No. 7 for $32,000, and the liability thereon for $31,000 paid

or conceded. And, at the same time, the collateral above mentioned in the sum of $25,000 and an additional sum of -$25,000 of like collateral were delivered to appellant as indemnity to it against liability on the three bonds. No part of the $50,000, collateral, consisting of $30,000 government bonds, was demanded or returned to the bank when the liability on the collector's bond was reduced by $45,000, but it still holds same at this time.

Back now to the three conditions of the bond above quoted:

No. 1. As to No. 1, the security held by the county in the form of collateral was released to the bank and deposited by it with appellant with notice to and its written consent in the form of a receipt therefor to the bank. This disposes of condition No. 1.

No. 2. As to No. 2, it is undisputed that at the time the loss was sustained on the bond, the obligees had moneys on deposit to their credit with the bank in a sum in excess of the penalty of the bond by $36,459.70, and it is also undisputed that the obligees had additional security equal to the amount of such excess deposits over the penalty of the bond. Therefore condition No. 2 has no application, as it applies only in case obligees "shall not hold additional security equal to the amount of such excess deposits." The so-called blanket bond is the additional security. Whether it is good or otherwise we are not called upon to say, but it had not been released or canceled.

No. 3. Under this condition appellant argues that since its bond was for $50,000 and the "blanket bond" was for the whole deposit of $86,549.70, it should be held liable only for such proportion of the total loss sustained as the penalty of its bond bears to the aggregate of both bonds, $136,459.70, or approximately 5/13 of $86,459.70. We cannot agree with this contention. The prior personal bond or "blanket bond" was executed nearly a year prior to the bond of appellant by the officers and directors, or some of them, of the bank. These same parties caused the bank to deposit collateral in a safe

deposit box, under the joint control of the bank and the obligees, to the amount of $25,000, which, to that extent, reduced their personal responsibility. Later the bond in suit was executed, and this same collateral was by the bank, with the knowledge and consent of its officers and directors, together with $25,000 additional, turned over to appellant to indemnify it against loss, and still it insists that the two bonds should share the loss in such proportion. They are not on a parity. One is a paid surety and the other is not. The manifest intention was, just as the learned trial judge held, to indemnify the county to the extent of $50,000 against loss in the bank. It exacted and took from the bank bonds of the par value of $50,000 but of an actual value in excess of that amount. It being a paid surety, the terms of the bond, like an insurance contract, will be construed most strictly against it. *K. C. S. R. R. Co.* v. *U. S. F. & G. Co.,* 174 Ark. 318, 295 S. W. 705. Under the facts and circumstances in this case, we are of the opinion that this holding accords, with the intention of the parties, and is not in conflict with a fair construction of the provisions of the bond.

Judgment affirmed.