**DARLING SHOPS, INC., OF TENNESSEE**
**v. BRACK et al.**
No. 10880.

Circuit Court of Appeals, Eighth Circuit.
Feb. 24, 1938.

E. L. McHaney, Jr., and S. Lasker Ehrman, both of Little Rock, Ark. (Grover T. Owens, of Little Rock, Ark., and Frederick E. Zvirin, and Philip Lippner, both of New York City, on the brief), for appellant.

Robert E. Wiley, of Little Rock, Ark., for appellees.

Before STONE, WOODROUGH, and VAN VALKENBURGH, Circuit Judges.

WOODROUGH, Circuit Judge.

On appeal from a judgment upon a jury verdict whereby the plaintiff's suit was dismissed with costs.

The Darling Shops, Inc., a Tennessee corporation, sued the three owners of store property known as 504 Main street in Little Rock, Ark., for damages for breach of a written lease dated December 19, 1934, by the terms of which the owners jointly leased the property to the plaintiff for the term of five years from March 1, 1935, with a five-year renewal option. The annual rental specified in the lease was $12,000 payable $1,000 monthly in advance, and "as further consideration and rent the plaintiff lessee agreed to pay an amount equal to 2½ per centum of all sums of money exceeding the gross sales in said premises over and above $650,000.00 per year." The first month's rent in the sum of $1,000 was paid in advance early in December, 1934, when a written agreement to execute the lease was entered into. The owners failed to deliver possession of the property to the plaintiff on or before March 1, 1935, in accordance with the terms of the lease and later on in August, 1935, the owners served notice in writing that they canceled the lease and refused to be bound by it. Thereupon plaintiff brought this suit claiming special and general damages.

It appeared without dispute that there were several associated corporations bearing the same name as the plaintiff "Darling Shops, Inc.," operating so-called Darling Shops in various cities, one of which corporations was organized under the laws of New Jersey and another under the laws of Tennessee, and that, when the lease of the property was originally drawn up by the owners and signed by them and the wives of two of them, "Darling Shops, Inc., a New Jersey Corporation" was named lessee therein, but before the same was signed by plaintiff the designation "New Jersey" in front of the word "corporation" was erased and "Tennessee" was substituted therefor. The fact that there was an erasure and typing in of the word "Tennessee" plainly appears looking at the first page of the lease at the beginning of the fourth line from the top. The plaintiff claimed that defendants orally authorized the change before it was made, and also that the defendants, knowing that the change had been made, ratified it and recognized and negotiated and dealt with the plaintiff as the tenant under the lease before they breached and repudiated the same.

The special damages were demanded in the complaint on the ground that the defendants knew when the lease was negotiated and entered into that it was the business of the Darling Shops, Inc., to acquire and maintain a chain of department stores in each of which the several departments were let to different subtenants and that different parts of the store in question were to be sublet to subtenants who would sell different lines of goods therein, and the plaintiff alleged that after the lease herein

was entered into, and pursuant to its agreement and understanding with the defendants, it proceeded to make subleases of parts of the building to six named corporations at a total annual rental of $24,000 representing a profit of $12,000 a year to plaintiff or $60,000 over the five-year term; that on plaintiff's failure to obtain possession of the property the sublessees made claims for damages against plaintiff aggregating large sums by reason of their having purchased merchandise and equipment for their respective parts of the store which they had to sell at forced sale and that they had also employed managers for the respective departments at large expense, for all of which losses plaintiff had become liable and was entitled to hold the defendants. Other items of special damage alleged were that plaintiff had incurred expense in negotiating for the lease and in attempting to get possession of the property and that it had incurred expense by hiring an architect and his two assistants for the purpose of remodeling the store. There was also claim for general damage in that the reasonable rental value of the premises for the term of the lease was alleged to be twice the rental stipulated in the lease.

A joint answer was filed by all the defendants in which they admitted their joint execution and delivery of a lease in form as set out in the complaint but alleged that the change in the designation of the lessee was made therein without notice to or consent by them. There were allegations in the answer to the effect that negotiations for the lease had been had with one J. A. Rosoff as agent and that Rosoff had "represented to the defendants that the plaintiff, a Tennessee corporation, was the head concern, solvent and financially able to perform the obligations of the lease"; that the defendants had "believed and relied upon said statements," but that the same were false, "the truth being that the plaintiff was not the head corporation of the associated concerns being operated as Darling Stores or Darling Shops in various cities but was a new and very subordinate corporation with only a nominal capital and wholly without assets and without any financial ability to pay rent or perform the obligations of the lessee in said lease."

It was also alleged in the answer that said lease was obtained by Rosoff by further fraud in that he had falsely represented and induced the defendants to believe that the lease was being obtained for the benefit of one Jack Fine who was then in possession of the premises as the tenant of the defendants; that it was falsely represented by Rosoff that said Jack Fine was to remain in possession and "this was a fraud upon defendants who wished to have their former occupant Jack Fine fully accommodated in the making of any lease." The joint answer also contained the following:

"Defendants admit that delivery of said premises was not made to plaintiff on March 1, 1935, and allege the truth to be that plaintiff agreed with defendants that said delivery should be postponed until September 1, 1935, and that failure to deliver on March 1, 1935, was with the consent of the plaintiff. That before September 1, 1935, to-wit: about August 1, 1935, defendants having discovered, as aforesaid, the frauds of plaintiff and Rosoff in procuring said purported lease, cancelled the same and notified plaintiff it would not be longer bound thereby."

"And defendants deny that plaintiff continually requested defendants to deliver said premises after March 1, 1935, or that defendants repeatedly informed plaintiff they would so deliver within a short while, but state the fact to be that the failure and postponement to deliver on March 1st was by agreement negotiated by defendants with plaintiff for a postponement of such delivery until September 1, 1935."

In accordance with the Arkansas statutes, Pope's Digest Statutes of Arkansas 1937, § 1427, there was no reply filed by the plaintiff, and the case went to trial on the issues presented by the complaint as amended and answer.

The testimony for plaintiff tended to show that Mr. Vivian O. Brack and his brother Milton G. Brack owned the property in question except for a life estate in a small undivided fractional part owned by their mother; that plaintiff's employee J. A. Rosoff, living at St. Louis, Mo., heard about the possibility of renting the store in question and got in touch with Mr. Vivian O. Brack by long-distance telephone. Mr. Vivian Brack said over the telephone that there was no lease on the store and he would be glad to talk to Mr. Rosoff about it. Mr. Rosoff thereupon went to Little Rock and had a conference with Mr. Vivian Brack at his office. There was discussion about the method used by Darling

Shops in merchandising their goods. Mr. Rosoff says: "I told him that we operated a chain of stores, all called the Darling Shops; that we had various corporations responsible for the leases; that the corporation which took the lease would in turn lease out various departments, such as shoes, dresses, underwear, furs, millinery, children's dresses, etc. I told him that we had a corporation in Tennessee and one in New Jersey. We agreed that the Darling Shops should pay him 2½% on all business over $650,000.00 per year. Mr. Brack stated to me that he, being an attorney, fully understood the procedure with all the departments of the business, and that with so many lines there was a chance for us to do over that amount of business, and that he hoped we would."

Mr. Rosoff also told Mr. Brack that the corporation that would sign the lease would sublet every department in the store.

As a result of the conference a written agreement for the lease of the property was drawn up by Mr. Vivian Brack and signed by him for himself and his brother as follows: :

"Vivian O. Brack, Attorney at Law
"Riegler Building, Little Rock, Arkansas.
"December 10, 1934.
"Rent of 504 Main Street, Little Rock, Ark.:
"Store building—2 story—40 ft. by 140 ft. outside dimensions: (Obliterated.)
"Five year lease with option of renewal for five years at minimum guarantee rental of $12,000.00 per year, payable monthly in advance, and two and ½ percentum of gross sales over $650,000.00 per annum, payable every six months.
"Lessee to make all alterations. Owners to take care of all repairs due to ordinary wear and tear. Owners to pay insurance on building, except liability incurred by alterations by tenant and tenant to pay elevator insurance. Joint rental insurance in case of destruction of building.
"Possession given within 90 days. Tenant is to pay one months rental in advance at time of signing lease.
"M. G. & V. O. Brack,
"By V. O. Brack."

Mr. Rosoff gave Mr. Vivian Brack a check for $1,000 containing the notation on its face "Rent of store 504 Main Street Little Rock Arkansas month of March 1st to April 1st, 1935," which was duly cashed. He took a receipt signed M. G. Brack and V. O. Brack by V. O. Brack.

Shortly afterwards Mr. Vivian Brack drew up four copies of a lease of the property in ordinary form and signed and acknowledged three copies and had them signed and acknowledged by his brother and his mother and by his own wife and his brother's wife as joint lessors with himself and mailed them to Mr. Rosoff in St. Louis. Mr. Rosoff says that on receipt of the documents he called Mr. Vivian Brack over the telephone and asked to have the lease changed to the Tennessee corporation and that he changed the lease right then in accordance with his conversation with Mr. Brack and mailed it to the New York office. It was executed by the plaintiff in New York and returned to Mr. Vivian Brack. Mr. Vivian Brack admitted that there was a conversation with Mr. Rosoff about changing the lease to the Tennessee corporation and that Mr. Rosoff wanted such change, but he denied that he authorized Mr. Rosoff to make it. He says he refused to authorize it.

In the same telephone conversation Mr. Rosoff explained to Mr. Brack that he was negotiating to lease out the shoe department and the millinery department and would like to have something in writing about it. To which Mr. Brack responded that "you don't need to have it, because it is to our advantage to have as many departments as you can get to fill up the building." On December 21, 1934, however, Mr. Brack mailed plaintiff a formal consent signed by all the owners to subletting the premises to subtenants "for the purpose of transacting a retail shoe and/or millinery business." In response to Mr. Rosoff's protest that the consent only covered two departments, Mr. Vivian Brack told Mr. Rosoff to go ahead and fill the necessary departments as he saw fit. Pursuant to that conversation the plaintiff went ahead and entered into the various subleases fully described in the complaint, including one for a shoe department and one for a millinery department.

After the execution and delivery of the lease to the plaintiff, the owners attempted to obtain return of the property from their tenant Jack Fine, who was then in possession, but Fine resisted and they were unable to get possession.

March 1, 1935, was the day on which the lease provided the property should be delivered to plaintiff. On March 2, 1935, Mr. Vivian Brack wrote the plaintiff's agent Rosoff among other things: "I suppose you received my telegram stating that

we could not expect possession before April first." On March 4, 1935, the plaintiff telegraphed as follows:

"Day Letter.
"Milton G. Brock
"c/o Vivian O. Brock
"Riegler Bldg.,
"Little Rock, Arkansas.
"Your failure to give us possession March first nineteen thirty five as per lease has caused us embarrassment and financial damage stop insist you expedite same immediately.
"Darling Shops Inc., of Tenn.
"370 Seventh Ave."

On March 5, 1935, Mr. Rosoff wrote:
"Darling Shop
"St. Louis, Mo.,
"March 5th, 1935.
"Mr. V. O. Brock
"Riegler Bldg.,
"Little Rock, Ark.
"Dear Mr. Brock:
"This is to acknowledge receipt of your letter with reference to the room that my firm has a lease on.

"I am going to be very frank with you, this matter has put me in a very embarrassing position with the owners of the Darling Shops. We have made preparation, bought merchandise, trained managers since we signed the lease. I have written you several times to make sure that we get the room at the proper time. My people are very fair and under the circumstances insist upon possession of the room. We are approaching the season and a month is a long time to wait and will be expensive to us. You must realize it will take some time to get this room in order for us to do business. The excuses Mr. Fine is offering are alibis. Under the circumstances we want to be fair, on the other hand get Mr. Fine out as soon as you can, file suit at once.

"Trusting you will obtain the possession of the room and let me hear from you by return mail as some of our executives want to go to Little Rock and I am holding them off until I hear from you. I do not want to put them to further expense."

The next day Mr. V. O. Brack telegraphed Mr. Rosoff,
"1935 Mar 6 A M 11 52
"J. A. Rosof—
"416 North 7 St—
"Impossible For Thirty Days Doing Everything Possible Not Your Fault Jack.
"V. O. Brack."

There was further correspondence and plaintiff pressed its request for possession of the property and was repeatedly assured that possession would be given as soon as the tenant Fine could be got out. The defendants employed an attorney and an agreement was then reached to postpone the delivery of the premises to plaintiff until September, 1935. Before that date on August 3, 1935, the defendants' attorney wrote plaintiff's attorney as follows:

"Gentlemen:
"Re Darling Shops, Inc.—Brack. ·
"I acknowledge receipt of your letter of July 26.

"By the lessee's insistence on an unjustified claim for large damages against the lessors and other incidents which have attended their dealing with lessors, including their substitution of the Tennessee corporation on the lease for the more responsible corporation, contrary to their agreement, lessors consider lessee has breached the lease dated December 19, 1934, between Milton G. Brack and Vivian O. Brack, as lessors, and Darling Shops, Inc., a Tennessee corporation, as lessee, covering the premises at No. 504 Main Street, Little Rock, Arkansas. On behalf of the said lessors, I am therefore instructed to notify you and the said lessee that said lease is held cancelled and for naught, and the lessors will no longer be bound thereby."

On the trial the plaintiff offered the subleases which it had entered into with the corporations named in the complaint and made offers to prove that the tenants named in the subleases had made claims for damages for plaintiff's breach of the subleases to them. It also adduced testimony and made offers to prove that it had incurred certain expenses in negotiating the lease and in attempting to get possession of the property and in paying for the services of an architect and his helpers preparatory to making necessary alterations in the store.

Defendants made objection to the introduction of any testimony to show special damage and the matter was argued out of the presence of the jury. The grounds of objection do not appear in the record, but the court sustained objection to and excluded all plaintiff's testimony and offers to prove in support of the claims for special damages and permitted only such testimony for the plaintiff to be received on the issue of damages as tended

to show reasonable rental value of the premises in excess of the rental called for by the lease.

Defendants called witnesses and gave testimony themselves, but in the view we take of the appeal the testimony need not be set out.

Apparently the court considered defendants' charges that plaintiff had perpetrated frauds had not been sustained, and none of such claims was submitted to the jury. The court concluded that the change which had been made in the lease was a material change and instructed the jury that it was admitted that the contract of lease, if valid, had been breached and that there were two matters for the jury to pass upon. That the first issue was, "did these defendants authorize that change in the lease contract. If they did not that ends the case. * * * Then, when you have passed upon that question, the burden still remains with the plaintiff to establish that the fair market value of the lease was in excess of $12,-000.00 per annum." On the first issue the jury was more particularly instructed:

"Before you can find for the plaintiff you must find that the lessors either expressly or by their duly authorized agent consented to the change in the contract from the New Jersey corporation to the Tennessee corporation; you must find first that Vivian Brack consented to the change. You must then find that Milton Brack, either himself or through his brother whom he authorized to make the change, consented to the change. Then you must find that Mrs. Brack, either through her son, Vivian Brack, consented to the change or authorized him to make it. That is the first issue you must pass upon in this case. If you find that it was not authorized by these three, either by giving their express consent or by someone who was—by the son, Vivian, who was authorized to represent either his brother, or both his brother and his mother, then you must find for the defendants because the change which was made in the lease is a material change and if made without authority of the lessors, it would make it illegal."

· The plaintiff claimed the testimony was sufficient to establish that defendants had held out Vivian O. Brack to be their agent for the negotiation and consummation of the leasing of their property so that his consent to the alteration was binding upon them. It requested the court to submit the issue of such holding out and of agency

to the jury. Plaintiff also claimed that defendants had ratified the change in the lease and it requested a peremptory instruction that defendants were bound on the lease as changed or that the question of ratification be submitted to the jury.

The court refused the requests and exceptions were preserved.

The verdict and judgment having gone against it, the Darling Shops, Inc., has taken this appeal and insists among other things that its claim that the lease became binding on defendants notwithstanding the alteration therein was erroneously disposed of.

It points out that there was testimony for plaintiff that its agent Rosoff had asked for and had been granted authority to make the change by Vivian Brack; that after the change had been made the documents were signed and acknowledged by plaintiff and were returned within a few days; that the fact of the change plainly appeared on the first page on the fourth line from the top of the documents so returned and the documents were kept by the defendants Vivian Brack and Milton Brack from March to August without any objection on the ground of the change. The telegram sent by the plaintiff on the 4th day of March 1935, protesting against the failure to deliver possession of the property, was signed by the plaintiff Darling Shops, Inc., of Tennessee. Appellant also insists that the facts which were pleaded by defendants in their answer upon which the case was tried ·(quoted above), considered with the testimony on the trial, tended to support the plaintiff's claim that there was ratification of the lease by the defendants after the alteration made therein.

█ We think that, notwithstanding each of the defendants testified that no authority to make the change in the lease was given and each denied knowledge of the change and denied ratification, still the plaintiff's testimony received in evidence and the facts pleaded by the defendants presented at the least an issue for the jury and the refusal of the court to submit the issues was error necessitating reversal.

█ ▪ It is elemental that acts that are done by one in behalf of another are valid if ratified expressly or by implication and that ratification may be by express consent or by acts and conduct of the principal inconsistent with any other hypothesis than

that he approved and intended to adopt what had been done in his name. Marshall County v. Schenck, 5 Wall. 772, 18 L.Ed. 556; Marshall Field & Co. v. Pearson, 5 Cir., 48 F.2d 485. The pleading and testimony tending to show that the defendants did negotiate with the plaintiff for a postponement of the commencement date of the lease and entered into an agreement for such postponement long after the lease had been changed and delivered back into the hands of defendants presented a question for the jury whether the defendants' conduct was inconsistent with any other hypothesis than ratification. It is true the lease was not given to or physically brought to the attention of the mother after it had been changed and executed by the plaintiff. She apparently made no request for it but was content to let her sons, each of whom had a copy, retain the same for her benefit. She testified that the first she knew about the lease her son Vivian brought it out and asked her to sign it. She was willing to execute a lease to some one who could pay the rent. She "did not know anything about the inside of the companies." She "didn't have any copy." But she did not repudiate the answer made for her by her attorney, and we think that as to her as well as to the other defendants the issue of ratification was for the jury.

■ It is argued for the appellees that the answer in this case was not offered in evidence on the trial and that the admissions therein pleaded are not to be considered against the defendants, but we think the contention is without merit. Admissions in the pleading upon which the trial was had and which was not amended or withdrawn must be deemed proven as judicial admissions and must be assumed against the pleader. Larson Co. v. Wrigley Co., 7 Cir., 253 F. 914; Greer v. Davis, 177 Ark. 55, 5 S.W.2d 742; Clark-Montana R. Co. v. Butte & Superior Co., D.C., 233 F. 547–559; Butte & Superior Copper Co. v. Clark-Montana Realty Co., 9 Cir., 248 F. 609; Id., 249 U.S. 12, 39 S.Ct. 231, 63 L. Ed. 447; Jeffress v. New York Life Ins. Co., 4 Cir., 74 F.2d 874, 876; Aiken Mills v. Boss Mfg. Co., 2 Cir., 65 F.2d 344, 374; Turfitt v. Perales, 5 Cir., 63 F.2d 659; Standard Acc. Ins. Co. v. Rossi, 8 Cir., 52 F.2d 547, 548; Id., 8 Cir., 35 F.2d 667, 670; Euclid Candy Co. v. Bank, 6 Cir., 48 F.2d 757; Pullman Co. v. Bullard, 5 Cir., 44 F.2d 347; Axelrod v. Osage O. & R. Co., 8 Cir., 29 F.2d 712, 729; Sebastian Bridge Dist. v. Hedrick, 8 Cir., 4 F.2d 346, 348.

The judgment must be reversed for errors in the trial of the issue raised by the change in the lease.

The court instructed the jury in effect that, unless it found that each and all of the three defendants had authorized the change in the lease, it should acquit them all from liability for the breach. The appellant excepted and insists that, whether defendant Vivian Brack had authority to bind the other defendants to the change in the lease or not, he himself would be bound if he authorized or ratified the change. The contention is that he would be bound, first, because of the Arkansas statute giving joint obligations the same effect as joint and several obligations, and second, because one who contracts as agent for another is himself liable on the representation of his authority if in fact he was without authority.

■ The appellees have insisted that the plaintiff's pleading did not clearly present an issue as to the individual liability of any defendant on account of "falsely holding himself out as agent" and, as there must be a retrial, clarifying amendments may be made to the pleadings. It appears to be the law in Arkansas that joint obligations are construed to have the same effect as joint and several obligations and may be sued on and recoveries had in like manner. Morgan v. Davis, 129 Ark. 236, 195 S.W. 389; Bledsoe v. Carpenter, 160 Ark. 349, 254 S.W. 677; Sections 1284, 1315, 1316, Pope's Digest; Consolidated Indemnity Co. v. State, 184 Ark. 581, 43 S.W.2d 240. The Arkansas cases cited also sustain the general proposition that one who holds himself out as an agent when in fact he has no such agency may become bound upon his implied contract that he had authority. Clements v. Citizens' Bank, 177 Ark. 1085, 9 S.W.2d 569; Hill v. First National Bank of Malvern, 129 Ark. 265, 195 S.W. 678; Dale v. Donaldson Lumber Co., 48 Ark. 188, 2 S.W. 703, 3 Am.St.Rep. 224; Hite v. Kendall, 2 Ark. 338.

■ Error is also properly assigned on the refusal of the court to receive testimony on or submit to the jury the claim of the plaintiff for special damages. It is well settled both under general law and by the decisions in Arkansas (which are controlling here) that upon wrongful breach of a lease by refusal of the landlord to

142

give possession to the lessee special damages may be recovered upon proper allegation and proof. As to the general law, see Sutherland on Damages, vol. 3, p. 3196, § 865; Sedgwick on Damages, vol. 3, p. 2045, § 984 et seq.; Taylor, Landlord and Tenant, vol. 1, p. 547 et seq., § 85; 35 C.J. 1191, § 500; 16 R.C.L. § 218, 219, p. 727 et seq.; Hadley v. Baxendale, 9 Ex. 341. Arkansas decisions: Howell v. Duty, 178 Ark. 1196, 1198, 10 S.W.2d 857; Thomas v. Croom, 102 Ark. 108, 143 S.W. 88; Morrison v. Weinstein, 151 Ark. 255, 236 S.W. 585; Franks v. Rogers, 156 Ark. 120, 245 S.W. 311; Rose v. Wynn, 42 Ark. 257. See, also, Andrews v. Minter, 75 Ark. 589, 88 S.W. 822; Young v. Berman, 96 Ark. 78, 131 S.W. 62, 34 L.R.A.,N.S., 977; Reeves v. Romines, 132 Ark. 599, 201 S.W. 822; Malone v. Wade, 148 Ark. 548, 230 S.W. 579; Wakin v. Morgan, 165 Ark. 234, 263 S.W. 783; and cf. Arkansas Rural Rehabilitation Corporation v. Longino, 192 Ark. 912, 95 S.W.2d 897, 899; Southwestern Bell Tel. Co. v. Carter, 181 Ark. 209, 25 S.W.2d 448; Fenton v. Price, 145 Ark. 116, 223 S.W. 364.

The limitation upon the right to recover special damages for such breach as quoted by the Supreme Court of Arkansas is "plaintiff * * * must show that at the date of the contract defendant had notice of the special conditions rendering such damages the natural and probable result of such breach, under circumstances showing that the contract was to some extent based upon or made with reference to such conditions." Morrison v. Weinstein, 151 Ark. 255, 236 S.W. 585, 586. In Howell v. Duty, 178 Ark. 1196, 10 S.W. 2d 857, 858 the same court said: "The measure of damages for the breach of this implied covenant for possession is the difference between the rental value of the demised premises and the rental price named in the lease, together with such special damages as have necessarily resulted from such breach."

The plaintiff sufficiently alleged the necessary elements of special damages in its complaint, and on a new trial the court will receive any competent evidence offered by plaintiff tending to sustain such allegations and, if sufficient competent evidence is offered by plaintiff, will submit the issue of special damages to the jury upon instructions in accordance with the law of Arkansas.

Error is also properly assigned because the court received in evidence over plaintiff's objection a copy of a letter written by Vivian Brack to Jack Fine, the tenant in possession, and admitted certain conversations between Jack Fine and Vivian Brack had in the absence of the plaintiff. The issues as made by the pleading of the defendants left it uncertain what, if any, connection Jack Fine had with the alleged breach of the lease by defendants. As it is unlikely that on another trial similar error will be made, it need not be discussed.

It is argued for appellant that the alteration which was made in the lease was not a material alteration. It effected a substitution of one lessee for another, and we are referred to no precedent for holding such an alteration to be other than material. We think the trial court was right in holding it to be material. Mersman v. Werges, 112 U.S. 139, 5 S.Ct. 65, 28 L. Ed. 641.

Reversed and remanded.